**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| **v.** | |
| **ARNELL WOODSON** | **NO. 26-24-03** |

**MEMORANDUM**

**HODGE, J.** **August 14, 2026**

Before the Court is Defendant Arnell Woodson's Motion in Limine to exclude evidence of (a) rap lyrics Woodson performed under the name DrenchSzn; and (b) rap videos Woodson performed in under the name DrenchSzn. (ECF No. 77 (the "Motion").) The Government indicated in its response to the Motion that it does not intend to introduce rap lyrics and solely intends to introduce one video posted to Woodson's publicly available Instagram account on September 26, 2025, showing Woodson and another individual with two firearms "consistent with" those recovered from 1222 W. Airdrie Street on October 2, 2025, and a large amount of United States currency. (ECF No. 88 (the "Response") at 9–10.)[1] The Government seeks to introduce this video without sound. (*Id.*) The Court therefore will proceed with its analysis of the Motion based solely on the September 26, 2025 Instagram video. Defendant's Motion is denied as moot as to the other evidence, which the Government has indicated it does not intend to introduce. For the reasons that follow, the Government is precluded from introducing the September 26, 2025 Instagram video.

## I. BACKGROUND

On October 2, 2025, the United States Marshals obtained information that a fugitive, Woodson's co-defendant Carlos Vega, was staying at 1222 W. Airdrie Street in Philadelphia,

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

Pennsylvania. (Response at 4.) The Marshals were granted permission to enter the home at 1222 W. Airdrie Street by co-defendant Morris Tucker's paramour, and they observed Carlos Vega, Morris Tucker, and Brian Peterson in the living room. (*Id.*) While in the home, the Marshals observed, in plain view, multiple firearms, a kilo press containing cocaine, ammunition magazines, loose ammunition, scales, bags of marijuana, packaged narcotics, unused narcotics packaging, and paraphernalia. (*Id.*) During the protective sweep of the home, the Marshals located Woodson sleeping in a bedroom upstairs on an air mattress. (*Id.*) Woodson was then taken into custody that day. (*Id.*)

On January 14, 2026, a federal grand jury returned a seven-count indictment against Defendant Arnell Woodson and his co-defendants Morris Tucker, Carlos Vega, and Jesus Sanchez. (ECF No. 1.) Woodson was charged with possession with intent to distribute controlled substances and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(D), and 18 U.S.C. § 2 (Count Two), and possession of firearms in furtherance of drug trafficking and aiding and abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 (Count Three). (*Id.*)

## II. PROFFERED EVIDENCE

On an unknown date, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") agents conducted an open-source search on Woodson's public Instagram account and observed Woodson and another individual in a rap video posted on September 26, 2025, six days prior to his arrest. (Response at 6.) In the video, Woodson is brandishing a handgun the Government describes as "consistent with" a handgun recovered from 1222 W. Airdrie Street. (*Id.*) The second individual in the video is brandishing a long gun, which has a distinctive feature on the frame consistent with the long gun recovered in the living room of 1222 W. Airdrie Street on October 2,

2025. (*Id.*) The Instagram video was not filmed at 1222 W. Airdrie Street. (Motion at 9.) At trial, the Government seeks to introduce this video without sound. (Response at 9.)

In its Response, the Government indicated that it was conducting forensic testing of the DNA samples recovered from the weapons inside of 1222 W. Airdrie Street. (*Id.* at 11 n.4.) On June 24, 2026 and July 8, 2026, this Court ordered the Government to provide the Court with an update on the status of that DNA analysis. (ECF Nos. 108, 111.) The Government responded that "[f]or each of the firearm comparisons in this case, Mr. Woodson was either excluded as a contributor to the DNA mixture or the results provided strong support for the exclusion of Mr. Woodson as a contributor to the DNA mixture." (ECF No. 113.)

## III. LEGAL STANDARD

In the Third Circuit, there are two categories of evidence considered "intrinsic" to an offense: (1) evidence that directly proves the charged offense and (2) uncharged acts performed contemporaneously with the charged crime that facilitate the commission of the charged crime. *United States v. Green*, 617 F.3d 233, 248–49 (3d Cir. 2010). If the evidence does not fall into one of these two categories, it is extrinsic and subject to a Rule 404(b) analysis. *See United States v. Williams*, 974 F.3d 320, 357 (3d Cir. 2020).

Federal Rule of Evidence 404(b) provides, in relevant part:

> ***(1) Prohibited Uses.***
>
> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> ***(2) Permitted Uses; Notice in a Criminal Case.***
>
> This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

"The 'permitted uses' of prior act evidence set forth in Rule 404(b)(2) are treated like exceptions to 404(b)(1)'s 'prohibited uses,'" and 'the party seeking to admit evidence under 404(b)(2) bears the burden of demonstrating its applicability.'" *United States v. Golden*, Criminal Action No. 19-00545, 2021 WL 1061214, at *3 (E.D. Pa. Mar. 18, 2021) (citing *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014)). Prior or subsequent bad act evidence must satisfy a four-part test to be admissible under Rule 404(b)(2). Specifically, the evidence must be: (1) offered for a proper Rule 404(b) purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative such that its probative value is not outweighed by undue prejudice under Rule 403; and (4) accompanied by limiting instructions, if requested. *See Caldwell*, 760 F.3d at 276–77.

## IV. DISCUSSION

The Government argues that the Instagram video is direct evidence of Defendant's possession of the firearms in this case, and thus it is intrinsic evidence not subject to a Federal Rule of Evidence 404(b) analysis. (Response at 10.) Defendant argues that the video is extrinsic evidence subject to Rule 404(b), and it does not meet Rule 404(b)'s requirements because it is not relevant under Rule 401, and any probative value is substantially outweighed by prejudice, in violation of Rule 403. (Motion at 1, 7–8.)[2]

Looking first to whether the video is intrinsic or extrinsic evidence, Defendant argues that the video is "extrinsic to the gun count [because] . . . the government cannot establish Mr. Woodson possessed any of the guns seized on October 2, 2025, in his videos." (Motion at 8.) The Court agrees. First, the firearm Woodson is holding in the video does not have any distinctive features

[2] Woodson also argues that introduction of the evidence would violate his First Amendment right to freedom of expression. (Motion at 1–4.) Because the Government has represented that it only seeks to introduce a still shot of the video without sound, these arguments are irrelevant.

that provide the Court with sufficient reason to believe that this weapon is the same as the one recovered at 1222 W. Airdrie Street. The Government characterizes the gun that Woodson is brandishing in the video as "consistent with a firearm recovered from 1222 W. Airdrie Street." (Response at 6.) The Government's Response also explains that the second individual in the video is brandishing a long gun, which has a distinctive feature on the frame that is consistent with the long gun that was recovered at 1222 W. Airdrie Street. (*Id.*) However, the Government describes no distinctive features of the gun that Woodson is holding in the video. (*Id.* at 6, 10–11.) Indeed, based on the images provided by the Government, the Court is unable to identify any distinctive features consistent between the two handguns. Furthermore, the DNA analysis of the weapons found at 1222 W. Airdrie Street did not show a positive match for Defendant. (ECF No. 113.) Merely asserting that the firearm Woodson is holding in the video is "consistent" with the gun found at 1222 W. Airdrie Street is insufficient for this Court to find that the video directly proves the charged offense.

Additionally, the Government cannot prove there is a "clear temporal relationship" between the Instagram video and the alleged offense, as required to show it is intrinsic evidence. *See Golden*, 2021 WL 1061214, at *3. Although Defendant published the video to Instagram on September 26, 2025, an Instagram video may be published at any point in time after the video was initially captured. *See id.* (holding that although Instagram video showing defendant brandishing a revolver with a distinctive paint job was posted eleven days prior to police finding a gun with the same distinctive paint job at his residence, the video did not constitute intrinsic evidence because its actual creation date was unknown so there was no "clear temporal relationship to the alleged offenses"). Because Woodson's Instagram video's actual creation date is unknown, the video has no clear temporal proximity to the charged crime and therefore cannot qualify as direct

evidence of the charged crime or evidence of a contemporaneous uncharged act that facilitated the charged crime. It follows that the video is thus subject to a Rule 404(b) analysis.

As explained *supra*, to be admissible under Rule 404(b)(2), prior or subsequent bad act evidence must be: (1) offered for a proper Rule 404(b) purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative such that its probative value is not outweighed by undue prejudice under Rule 403; and (4) accompanied by limiting instructions, if requested. *See Caldwell*, 760 F.3d at 276–77. Although Defendant's Motion explains why the video does not meet the requirements of Rule 404(b) (Motion at 7–8), the Government does not engage in Rule 404(b) analysis in its Response at all and simply stops its analysis at whether the evidence is intrinsic or extrinsic to the offense. (Response at 10.) As such, the Government has failed to articulate *any* proper purpose under Rule 404(b), which is its burden. *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017).

Even if the Government could articulate a proper purpose for the video's introduction, the Court finds that it would be excluded under Rule 403.[3] Rule 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." The Court finds that the evidence is of limited probative value because the video was not filmed at 1222 W. Airdrie Street so it does not show that Woodson possessed a gun at that location, and the gun held by Woodson has no distinctive features tying it to the one seized from 1222 W. Airdrie Street. This limited probative value is substantially outweighed by the danger of unfair prejudice. Unfair prejudice is an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997)

[3] Defendant also argues that the video does not meet the relevancy requirement under Rule 404(b)'s four-part test (Motion at 8), but because the Government has not identified a proper 404(b) purpose, the Court cannot engage in that analysis.

(citation modified). Such improper grounds include "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged." *Id.* This is precisely the sort of risk introduction of the Instagram video creates. The video showing Woodson in possession of a gun is likely to persuade the jury that Woodson had a propensity to carry guns. The weight of this risk is greater than its limited probative value. Because the Court holds that the Instagram video is inadmissible under Rule 403 and therefore does not meet the four-part test for admission under Rule 404(b), the Court holds that the video shall be excluded.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion is granted as to the September 26, 2025 Instagram video, and the Government is precluded from introducing the video at trial. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**